May I proceed? Yes, sir. Thank you, Your Honors. As the Court is aware, this appeal stems from what was originally filed in the State Court, Circuit Court of Hines, I'm sorry, Forest County, Mississippi. The issue that we've appealed, Your Honors, is the application of the federal status of a Mississippi National Guardsman, in this case, Colonel Gregory Michel. Kind of a little bit of background, because it's important to know kind of where this case comes from. Mr. Gilmore, the appellant, was the manager of a club, I guess you could call it, the All Ranks Club on Camp Shelby, which is actually the largest state-owned training facility in the country. Is it on the camp or is it adjacent to it? I was a little unclear in the briefs. Is it actually physically on the grounds of the facility? I've never been to the All Ranks Club, but I believe it's actually on base. There are some other facilities outside, but I believe it's actually on base. Now, the All Ranks Club itself is a state-run facility with state-run employees. It's subject to the Mississippi Personnel Board policies, the Mississippi Appeals Board, and Mr. Gilmore fell under those policies and procedures, as well as does every employee there at the All Ranks Club. Now, of course, Colonel Michel is a National Guardsman, which the United States agrees generally is a state employee, except when given federal status under the Westfall Act, which all falls under Title 32, as to what applies as to whether or not Colonel Michel would qualify for certain acts as a federal employee. Now, originally, the district court actually granted our motion to remand and found that Gregory Michel or Colonel Michel did not fall under the federal status, but upon a motion to reconsider, he reconsidered his ruling, substituted the United States, and obviously the case was ultimately dismissed at that level. However, under the statute argued by the government, 32 U.S.C. 502, specifically F, is the subsection that the government references in its argument. Colonel Michel's involvement with the All Ranks Club does not qualify under federal status, and I would point the court specifically, of course, we're talking about statutory interpretation, and there's not a lot of statutory interpretation done by the courts on this particular statute, but Section 502F of Title 32 involves drills and field exercises, and it's very specific in what qualifies for duties under this subsection. Section 502F, subsection 2, which is the only applicable section here argued by the government, says that the training or duty ordered to be performed under Paragraph 1 may include the following. And, of course, in Subsection A, this is not an operation or mission. This is training at Camp Shelby. But it says support of operation or mission. Yes, Your Honor. This is not an operation. This is a training, I guess, supposedly. Well, training would be the mission then, wouldn't it? I believe that would probably be correct, but I, unfortunately, was not able to serve in the military, so I'm afraid I can't answer that question. Well, I mean, what else could it be? Whatever the base is designed to provide would be its mission, and if it's a training base, then if the person in question is operating in support of that mission, wouldn't he fall under Subsection A? Well, no, Your Honor, because Subsection B actually is specific, and I believe that, of course, they don't cite it. But Subsection B relates specifically to training operations. Yes, Your Honor, that's the subsection I was about to touch on because that one specifically, of course, neither side has argued this, but, of course, if there's a more specific statute, that statute is the one which would apply. But Subsection B specifically says that support of training operations and training missions, and I would agree that the operation of Camp Shelby in general would apply to Subsection B. But there's a but in the statute that says, but only to the extent that such training mission and training operations, and there's a Subsection 1 and Subsection 2. Subsection 1 applies, no doubt, but Subsection 2 says are only to instruct active-duty military, foreign military, Department of Defense contractor personnel, or Department of Defense civilian employees. The operation and every employee of the All Ranks Club do not fall under the statute because they are Mississippi State employees. They are not Department of Defense employees. They're not even Department of Defense contractor personnel, and she's certainly not active-duty military or foreign military. So the statute— They're in support of those operations, arguably. Oh, I would agree that they're in support, but the statute says it only applies, the duty listed under the statute only applies to the instruction of those active-duty military, foreign military, DOD employees, and civilian contractors. But Ms. Gilmore and the entire operation there at the All Ranks Club is a state-run facility. The base itself is a state-run operation. But what Subsection B says, it starts off support of training operations, and then it goes on to talk about the training mission, and to me that only to the extent that such training mission and training operations doesn't refer back to the support. In other words, the subsection under B relates to the training itself and not to the support. Your Honor, I agree to a certain extent. I guess the issue that I have with this is that the statute, I feel like, is fairly clear and unambiguous that in order for it to be a duty under Title 32, the All Ranks Club is something that he was given just because he's over at Camp Shelby. Which, in general, as a National Guardsman, Colonel Michelle would be a state employee. But the legislature has carved out and said that these duties only apply to training missions and training operations to the extent that it is the instruction of active-duty military or military personnel. This restaurant on campus has not a single, or on the base, does not have a single military personnel in it. It is strictly state employees run by the State of Mississippi. And they, not a single one of the employees, to my knowledge, would even qualify under Section 502F2B2, which is a clear requirement of the statute. Just like, and there's another case, if the legislature intended to carve out or include these type of personnel, Fifth Circuit law says they could have done that. Is it the relevant inquiry what Michelle's status is? I mean, we spend a lot of time, I know, in the briefs, and you've mentioned here today, with the status of the plaintiff as well as the other employees that work in this club. It seems to me the case turns on what his status is. I would agree that his status is what's important. But in order to determine his status, you have to look at which duties were for what. When you look at what the duties are, when it comes to the All Ranks Club, he may very well have been responsible for the operation of the All Ranks Club. Your theory is that during the course of a day when he's there, pursuant to his National Guard duty, he would actually change hats and have official time as well as private time or private responsibilities in which he would be subject to, like a private citizen, subject to all of the guidelines. Correct, because I guess the best way to interpret that is the statutes that under Title 32, there are several different duties which qualify for federal status, such as 32 U.S.C. 115 applies for funeral processions for military. So the legislature has carved out all these different duties which qualify for federal status. 32 U.S.C. 316, if you're a rifle range instructor, that's federal status. 32 U.S.C. 503, if you're engaged in field exercises. 504, if you're doing a school or smalls arms competitions. They have all these different duties that the legislature has undertaken to list, because generally a Mississippi National Guardsman or any National Guardsman across the country is a state employee unless they fall under the provisions of a statute. Let me ask you this. What about the PX or the chow hall? The chow hall would be, Your Honor. Pardon? The chow hall because, again, those have different types of employees on these bases. What if they were state employees? What if it's contracted out or whatever? Well, Your Honor, that would be a hypothetical that I don't know the answer to because that's not. . . What you're saying is you can't have any support, any military people who are providing support for the training exercises who would be considered employees. I can't read the statute that way. It says support of training operations, and that's my problem. Well, Your Honor, and this isn't arguing any of the briefs, but it's public record that the U.S. Army has its own personnel handbook for these, I guess the NAFI, the non-appropriated funded instrumentalities. This particular outfit here is a state-owned facility that is not even subject to that NAF handbook that the Army puts out. Now, in a situation where you have a NAF. . . What this creates, if your argument is not upheld, is sort of a vacuum because under state law there's that, I assume you were going on that state law that protects whistleblowers. Yes, Your Honor. And under federal law, all you've got is the Tort Claims Act. If that's true, that doesn't even cover intentional conduct. So I'm not quite. . . And I don't see any other. . . Is there any other potential remedy under federal law? I don't believe so, Your Honor. So there's a hiatus for all these employees? Essentially, like Your Honor is saying, finding that Colonel Michel. . . And again, if this was a. . . If Colonel Michel was acting in federal status and the employees would then be able to take advantage of the NAF and the administrative agency procedures, they could appeal that route. They don't have that option here. So any wrong done by Colonel Michel in this role, they have no remedy for except the Federal Tort Claims Act, which they don't fall under any agency under federal law, so they really don't have any remedy that they could seek except under state law, which is because Colonel Michel was acting in state capacity at the time. And it all goes back to the fact that, in general, he is a state employee unless he falls under these specific duties. And again, I go back to. . . I know Your Honor, Judge Davis had mentioned the chow hall and things like that. Again, I've never served in the military, but I believe many of those people are active military who serve in those roles. Now, if we were on Camp Pendleton, for example. . . No, they're not. Most of them are contractors. And I believe that those would fall under DOD contractors, especially on a federal base like Pendleton or some of these other bases around the country. But Camp Shelby is not a federally owned facility. This is a state-owned and run, operated, the largest one in the country that's owned by a state. And so it's not like Camp Pendleton where they have these DOD contractors who provide these food services. Here you have a facility, the All Ranks Club, which is state-run, state-operated. All the employees are subject to state control. And whenever Colonel Mischel is acting over that particular entity, there is not a statute under federal law, especially Section 502, or any provision under Title 32, which would afford him federal status, which is why, of course, we're able to rebut the U.S. Attorney's certification here by just simply showing that it doesn't fall under that status. I know one thing the district judge held was, well, the U.S. Attorney kind of said it does, and here's the statute that it uses. But Colonel Mischel just doesn't fit under the statute, especially since Ms. Gilmore is not active-duty military, foreign military, or a DOD contractor. And I'll go back to this. If this were Camp Pendleton or somewhere where they have a Department of Defense contractor who is providing these services, or if this facility was subject to non-appropriated fund personnel policies, which the Army has a handbook for those types of facilities, we'd be in a different boat because those employees are actually considered, for some purposes, federal employees. This is not that kind of facility. This is a state-owned and operated facility. So without those— I think we have your argument. Yes, Your Honor, I was about to actually say, if Your Honors have any questions. No, I think it's a pretty clear cut, even if it's not obvious. Okay. Ms. Johnson. May it please the Court. Yes, ma'am. Christy Johnson for the United States. Your Honors, this appeal requires the Court to determine whether the District Court properly substituted Colonel Gregory Mischel, the United States, for Colonel Gregory Mischel as the party defendant in this action. Making this determination is a two-step process. Step one is determining whether Colonel Gregory Mischel is a covered employee under the Federal Tort Claims Act. And step two is determining whether Colonel Gregory Mischel was acting in the course and scope of his federal duties when the complaint of conduct occurred. Turning to step one is whether Colonel Gregory Mischel is a covered employee under the Federal Tort Claims Act. And the language of the Federal Tort Claims Act says that he is. The language states that members of the National Guard engaged in training or duty under certain sections of Title 32 entitled him to protection under the Westfall Act. Here, the relevant section is 502F. The United States before the District Court submitted unrebutted evidence that Colonel Gregory Mischel, his 502F orders placed him as the installation commander at Camp Shelby. So suppose he, while in the course of duty on Camp Shelby, had gotten mad at somebody and just run his car over him. Where would that fall within the law? So that would fall under the step two analysis is whether that conduct was in the course and scope of his employment. Well, suppose he was rushing to check out something that was going on on the base. If he was driving to check out something on the base in line with his duties and he ran over someone, then yes, that would be a covered act. But as you know, the Tort Claims Act does not cover intentional acts, right? That's correct. That would be a no. So in other words, this is an employee who has no protection whatever from any intentional misdeed on the part of the employer. Is that right? Well, Your Honor, if he is a federal employee, the Federal Tort Claims Act gives him that protection. Well, as you know very well, all other federal employees have multiple remedies available through the civil service. So, you know, this argument results in what seems close to an absurdity to me. Well, Your Honor, the Federal Tort Claims Act, and it's just the nature of what sovereign immunity allows, and the United States, when it consents to be sued, sets out explicit ways that the United States can be sued. And sometimes you're correct, Your Honor, that it is an unfair and harsh result, but Colonel Michel here, because he is on 502F duty status, is a covered employee under the Tort Claims Act and is entitled to absolute immunity from suit. Is there anything that specifically says what his responsibilities are when him or anybody else who is delegated to serve in that capacity at that military facility, what their responsibilities are with regard to the All Ranks Club? Is there anything in writing that says, oh, by the way, in addition to all of these other things, drilling the man and being responsible for requisition and whatnot, you're also going to have to do A, B, and C over at the All Ranks Club? Your Honor, no, sir, is the quick answer. However, under the Army Regulation 600-20, it lays out that an installation commander is responsible for installation management services, which would entail, as we spelled out in the brief, these non-appropriated fund instrumentalities. And Gilmore argues that this is just a bar and grill. It has absolutely nothing to do with the military. However, it is, Your Honor, in response to your question earlier, actually on the base. This is a restaurant that services not only our soldiers but also civilians. But the profits of this non-appropriated fund instrumentality actually go back to improve the installation and specifically to the morale, welfare, and recreation programs. Which is a state program? Counsel made the point about this being a state facility. The monies that you just referenced, any profits, those would go toward a state fund? That's correct. When you say a state fund, it's actually going back to Camp Shelby, which is a state facility. Which is a state facility. That's correct. Let me give you another example. Suppose Ms. Gilmore were African American and he fired her because of her race. No remedy. Well, Your Honor, under the case law that I have read, Ferry's Doctrine and also Title VII, when these employees are on 502F orders, they are considered federal employees in other contexts, such as Title VII. So it's certainly possible that she would still have a remedy to file a Title VII action. But it wouldn't be against Colonel Lachelle in his individual capacity because Title VII can't be filed against an individual anyway. You could file Title VII against, what, the state of Mississippi? Possibly. I'm not sure what the bar would be, but it certainly could not be against Colonel Gregory Lachelle under Title VII. But I will say in the context of Title VII that Colonel Lachelle, because of these 502F orders, would be considered a federal employee. And, again, Your Honor, I understand your concern that she may not have a remedy in this context, but, again, it's just the nature of sovereign immunity. Who's her employer?  The state of Mississippi, is my understanding. So she's an employee. Why doesn't that state whistleblower law apply to her? It possibly may. And how that would run through the state system is a question that would be better suited for the state. But in response to your comment earlier, Judge Engelhardt, it is the status of Colonel Gregory Lachelle that is relevant to this inquiry. Now, if Gilmore thinks that somehow the All Ranks Club responsibilities are outside the scope of his federal responsibilities, that does not take him out of the protection of the Westfall Act. It falls under Step 2 of the analysis. Is he acting in the Westfall Act? It doesn't control the substantive liability, though. It's a removal statute. That's correct. But when it goes to whether he was acting in the course and scope of his federal duties, it's Step 2 in the analysis, and that's controlled by the law of the state of where the complaint of conduct occurred. And here is in Mississippi. So even if the court concluded that somehow these duties related to the All Ranks Club fell outside the scope of his federal responsibilities, under Mississippi law, even unauthorized conduct is still included in the definition of course and scope of employment if it's incidental to the authorized conduct. So here we have an installation commander that's on installation commander duties under 502F, and he's overseeing the entire installation. So if All Ranks Club somehow falls out of those duties, it would still be incidental to the conduct of managing this installation under his federal orders. Doesn't it also have to be considered other duty under Section 502? Yes, Your Honor, that's correct. And how do you answer counsel's argument that it's not other duty under 502? Well, Your Honor, in the case that I cited in my brief, Jackson v. Tate, the 502F covers a broad swath of National Guard activity that places it under the Westfall Act protection because it covers training and, quote, other duty. But then it itemizes other duty, doesn't it? Correct, Your Honor. And Gilmore has yet to explain how the installation commander who is over an entire installation that's training not only active and reserve Army, but they're also training Air Force, Navy, and Marines. So it's the entire support of the operations is what Colonel Gregory Mischel is in charge of. And also this active guard reserve soldier that he is places him in full-time National Guard duty. So basically there's no remedy for her allegation under the circumstances you're suggesting for her allegations that, or if there were allegations that proved true, that they were just stealing liquor right and left from the All Rings Club. Are you saying she has no recourse? Right. She has no recourse against Colonel Gregory Mischel, that is correct, or against the United States. Now, Your Honor, possibly, you know, against the United States there may be some exception or some way that Gilmore can bring this action against the United States. However, what she first has to do, and the reason the district court dismissed it, is she has to go and exhaust her administrative remedies first. And then at that stage can determine whether she has a remedy against the United States and could possibly file a lawsuit then. But that has not occurred. And, Your Honors, I would just ask if there are no more questions, that the court affirm the district court's substitution of the United States as the proper party defendant for Colonel Gregory Mischel and affirm the dismissal of the claims against the United States without prejudice. I have a question, and I don't know whether it's for you or for your co-counsel, and I'm relatively new here so my colleagues may be familiar with this term, but what does it mean to say that a reading of a statute is crabbed? To say that it's crabbed is that he's trying to be too specific, say that the statute is too limiting. And, again, in the Jackson v. Tate case, this 502F orders under this active guard reserve program, Your Honors, it places broad activity under this particular statute. And if you look at Title 10 U.S.C. 101-D-16, where it defines the active guard reserve duties, the purpose is to assign these soldiers to full-time National Guard duty to administer, to train, to organize, which recruit also fell under that category as well. So it's a broad swath of activities, not simply training. Okay. I just hadn't seen the term in a brief before and hadn't heard it used in that context. Thanks. Thank you, Your Honors. Okay. Thank you. Mr. Dambrino. Thank you, Your Honor. Members of the panel, I'm Robert Dambrino. I represent the State of Mississippi in the Mississippi Military Department. I've only reserved five minutes because the appellant in his brief assigned no error to the dismissal of the State of Mississippi in the Mississippi Military Department by the district court below. We would stand in support of and join the United States in their arguments regarding the propriety of substitution under Westfall. We would state emphatically, as we have in our brief, that the appellant has waived any complaint of error against the district court decision dismissing the state. For failure to assign any error in his brief. It is not mentioned at all, not in his brief nor in his reply to our brief. That said, I'm subject to your questions. I will tell you that it is our position that the judge's dismissal of the state was entirely appropriate under the 11th Amendment and would stand alone as appropriate in view of Will versus the Michigan Department of State Police case, which provides that arms of the state and the state are not persons under 42 U.S.C. 1983, etc. That being the case, I'm subject to your questions. I don't have any questions.  Thank you, Your Honor. All right. Appreciate your comments. Thank you, Your Honors. In regards to the state, of course, our position has always been this should be in state court, which when the district court dismissed the state here, that would be where any case that may proceed against the state would go back to state court. Of course, that's why we haven't addressed any of those issues in our briefs. I just have one brief statement, I guess, to make in regards to, and as Your Honor pointed out, the other duties are defined under that statute. And, again, as there are a number of statutes which apply that might give a National Guardsman federal status, as the court held the Fifth Circuit in Williams v. U.S. 71 F. 3rd 502. Now, this was actually in regards to whether or not Congress was excluded. If Congress, and this is what the court says, if Congress intended to exclude members of Congress from the provisions of the Federal Tort Claims Act, it could have expressly done so within the language of the act. And if our Congress intended that the supervision of a facility such as the All Ranks Club was intended to fall under Colonel Michel's federal status, just as the court held in Williams, if they wanted to exclude people, they could have so said it. Here, not a single word is mentioned of these state employees, state facilities, state services, not a mention of it. It's all Department of Defense, active duty military, foreign military, and everything else is DOD. So if our Congress intended to cover the acts that we complain of Colonel Michel in regards to the All Ranks Club, just as the court held in Williams v. U.S., they could have said so. But they have not, and in fact, it actually excludes anything that is not active duty military, foreign military, or DOD contractors. So, Your Honor, that's all I have, unless Your Honors have anything further for me. No, thank you. We appreciate it. Thank you, Your Honors. All righty. Appreciate everyone's brevity. Court will stand in recess.